IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| **LAKETHA MOORE,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | CIVIL ACTION NO. _____ |
| | § | |
| **STARR R&R SECURITY, INC.** | § | |
| | § | |
| | § | |
| **Defendant.** | | |

### PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff Laketha Moore hereby files this Original Complaint against Defendant Starr R&R Security, Inc. for violating state and federal law. The causes of action and summary of claims relating thereto are addressed below:

### I. PARTIES, JURISDICTION, AND VENUE

1. Plaintiff Laketha Moore ("Plaintiff" or "Moore"), is currently a citizen and resident of the State of Texas.

2. Defendant Starr R&R Security Inc., ("Defendant" or "Starr"), is a Texas corporation, authorized to do business, and is doing business, in the State of Texas. Defendant may be served through its registered agent for service, Thomas Renschler, located at 600 S. Valley Mills Rd., Waco, TX 76711.

3. The Court has jurisdiction to hear the merits of Plaintiff's claims under 28 U.S.C. §§1331 & 1343. Venue exists in this district and division as detailed in 28 U.S.C. §1391.

4. Plaintiff filed a Charge of Discrimination ("Charge") with the Texas Workforce Commission – Civil Rights Division, ("TWC"), and the Equal Employment Opportunity Commission, ("EEOC"), on or about March 9, 2018, alleging illegal harassment and retaliation.

---

6. Plaintiff's claims under the Civil Rights Act of 1964, (as amended), 42 U.S.C. §§2000e *et. seq.* ("Title VII"), are being commenced within the required statutory time limits of Title VII as (a) the Charge was filed within 300 days of the ongoing sexual harassment and retaliation, and (b) this lawsuit is being filed within 90 days of the Notice of Right to Sue issued by the EEOC on May 9, 2019.

7. Plaintiff's claims under the Texas Commission on Human Rights Act ("TCHRA"), TEX. LAB. CODE. §§ 21.001 *et. seq.,* are being commenced within the required statutory time limits as (a) the Charge was filed within 180 days of the ongoing sexual harassment and retaliation, and (b) this lawsuit was filed within 60 days of receiving the Notice of Dismissal and Right to File Civil Action, (on or about April 15, 2019).

### III. FACTUAL BACKGROUND

8. In 2017 Moore became re-employed by Starr as a security guard. Moore had worked for Starr previously and had no serious problems, but from the time she started her employment with Starr in 2017, her supervisor began making sexually offensive and unwanted advances towards her.

9. The sexual harassment by Moore's supervisor eventually escalated to the point that it was occurring on a daily basis, and it included – but was not limited to – numerous requests to engage in sexual relations with him, and him also discussing sex, such as the supervisor telling Moore he wanted to (a) have sex with her, (b) "eat" her, (c) lick her, and (d) shower with her. He also sent her sexual pictures.

10. In addition, Moore's supervisor became dangerously possessive towards her, telling her that he loved her, and making comments such as, "your body is my body," (including doing so on one occasion while pulling out his gun). He would also get upset if anyone else showed an interest in Moore. The theme that Moore's supervisor owned Moore was constantly reiterated, and she became afraid to even be around him.

11. Starr knew that Moore's supervisor had the propensity to commit sexual harassment of female staff, as other female employees had made sexual-harassment complaints to Starr about Moore's supervisor. However, instead of rectifying the circumstances, these women were forced to resign.

12. Although Moore rebuked her supervisor's sexual advances, his improper behavior continued. Moore then complained to a higher-level Starr supervisor about the sexual harassment, and he confirmed that he already knew about previous sexually-harassing incidents committed by her supervisor; however, he failed to do anything to address the situation. He also discouraged Moore from getting a lawyer, telling her she should instead report the matter to the Starr-corporate office. Moore did not understand this advice, as it was this manager's responsibility to report the events, and Starr was already aware of her supervisor's propensity to sexually harass female staff.

13. Moore's supervisor found out about her sexual-harassment complaints to the higher-level manager, and he started to act in a more threatening manner towards her. He began making comments about how good the company's lawyers were, and that if something happened to his job he may kill someone. Although Moore previously had concerns about her safety at work, these new threats escalated those concerns.

14. A few weeks after making sexual-harassment complaints about her supervisor, Moore was forced to work in a car that had carbon monoxide being pumped into the car's cabin. She informed her superiors of this circumstance, but nothing was done to rectify the problem. Eventually Moore had to go to the Emergency Room for carbon-monoxide poisoning, and her supervisors still did not remove her from the situation.

15. It was clear to Moore that her supervisor would continue to threaten her, intimidate her, harass her, and put her in a life-threatening situation if she continued to work for Starr, (and refused to engage in sexual activity with her supervisor). Thus, Moore was forced to resign from Starr, as no reasonable person should and/or would be able to endure such treatment in the workplace.[1]

16. Moore was sexually harassed by her supervisor, then intimidated and retaliated against by her Starr supervisor for refusing to engage in sexual activity, and for making complaints of sexual harassment against this supervisor to higher-level management. This affected the terms and conditions of Moore's employment, and ultimately led to her constructive termination.

---

[1] Even after leaving the employment of the Starr, Moore's supervisor continued to contact her and sexually harass her. Again, Starr did nothing to stop it.

**PLAINTIFF'S ORIGINAL PETITION**  PAGE 4

### III. CAUSES OF ACTION

A. <u>VIOLATION OF TITLE VII & TEXAS COMMISSION ON HUMAN RIGHTS ACT</u>

17. Plaintiff realleges and incorporates the allegations contained in Paragraphs 1 through 16 as if fully stated herein.

18. Plaintiff has satisfied all jurisdictional prerequisites in connection with her claim under the TCHRA and Title VII.

19. Defendant is an "employer" as defined by the TCHRA and Title VII.

20. Plaintiff is an "employee" as defined by the TCHRA and Title VII.

21. During the time that Plaintiff was employed by Defendant, she was subjected to sexual harassment, and retaliation by Defendant for engaging in protected activity as defined by the TCHRA. These actions created a hostile-work environment, and affected the terms and conditions of Plaintiff's employment, and ultimately led to the constructive discharge of Plaintiff.

22. Defendant did not have adequate policies or procedures in place to address the harassment and retaliation, nor did it implement prompt remedial measures.

23. As described above, Defendant intentionally and/or willfully violated the TCHRA and Title VII by allowing Plaintiff to be sexually harassed, and ultimately retaliating against Plaintiff for making complaints of sexual harassment.

24. In illegally harassing and retaliating against Plaintiff, Defendant acted with malice and/or reckless indifference to the statutory-protected rights of Plaintiff.

25. Because of Defendant's violations of the TCHRA and Title VII, Plaintiff has suffered mental trauma – including loss of enjoyment of life, actual damages in the form of lost wages and benefits – both past and future, and other losses.

26. Because of Defendant's willful violations of the TCHRA and Title VII, Plaintiff has suffered mental trauma, actual damages in the form of lost wages and benefits (past and future), and other losses. Thus, Plaintiff should be awarded all actual, compensatory and punitive damages, to which she is entitled – as outlined in the TCHRA and Title VII – as well as equitable relief, attorney fees and costs.

## IV. JURY DEMAND

Plaintiff requests a trial by jury on all claims.

## V. PRAYER FOR RELIEF

Wherefore, Plaintiff requests that Defendant be cited to appear and answer, and that on final trial, Plaintiff have judgment against Defendant as follows:

a. Judgment against Defendant for actual damages, including lost wages and benefits, (both past and future), the sum to be determined at time of trial;

b. Judgment against Defendant for compensatory damages in the maximum amount allowed by law, (including mental anguish and loss of enjoyment of life);

c. Judgment against Defendant for punitive/exemplary damages in the maximum amount allowed under law;

d. An order that Defendant take such other and further actions as may be necessary to redress its violation of the law, including reinstatement and injunctive relief;

e. Pre-judgment and post-judgment interest at the maximum amount allowed by law;

f. Costs of suit, including attorney's fees;

g. The award of such other and further relief, both at law and in equity, to which Plaintiff may be justly entitled.

___

Respectfully submitted by:

**/s/ Robert (Bobby) Lee**
Robert (Bobby) Lee
Texas Bar No. 00787888
lee@l-b-law.com
Angela May
Texas Bar No. 24095077
may@l-b-law.com
Megan Dixon
Texas Bar No. 24079901
dixon@l-b-law.com

**LEE & BRAZIEL, L.L.P.**
1801 N. Lamar, Suite 325
Dallas, Texas  75202
Telephone: (214) 749-1400
Telecopier: (214) 749-1010
**ATTORNEYS FOR PLAINTIFF**